UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROBERT ALFANO,

                              Plaintiff,            **MEMORANDUM
                                                                  AND ORDER**

           - against -
                                                                        CV 06-3511 (NG) (JO)

NATIONAL GEOGRAPHIC
CHANNEL, et al.,

                              Defendants.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       Plaintiff Robert Alfano filed the instant lawsuit against various defendants seeking damages he claims to have sustained as a result of their roles in disseminating a photograph depicting him in the company of the late John Gotti ("Gotti"), the erstwhile boss of an organized crime family. Alfano filed the case in state court, and the defendants thereafter removed the action to this court on July 17, 2006. Docket Entry ("DE") 1. I was randomly assigned to the case upon its removal, and held my first conference with the parties on December 13, 2006. In the months that followed, I held a number of conferences and made a number of rulings, some of which favored the plaintiff, and more of which favored the defendants. After more than eight months of litigation before me, and in response to the latest ruling against him, Alfano first raised an objection to my participation in the case on the basis of the fact that during my career as a federal prosecutor, I was a member of a team of attorneys who prosecuted Gotti. *See* DE 63 at 12-13 (memorandum of law in support of objections to discovery rulings pursuant to Fed. R. Civ. P. 72(a)). Alfano now asks me to disqualify myself from the case pursuant to 28 U.S.C. § 455. DE 73 (Notice of Motion). For the reasons set forth below, I deny the motion.

I.     Background

    A.    Alfano's Attenuated Connection To Gotti

Alfano alleges that defendants NGHT, Inc., NGC Network U.S., LLC (together, the "NG defendants"), and Corbis Corporation misappropriated his image and likeness in violation of section 51 of New York's Civil Rights law. DE 15 ("Complaint"). His complaint is predicated on the use defendants' dissemination of a photograph that shows him in the company of Gotti (who was convicted of racketeering, murder and other charges related to his role as boss of the Gambino Organized Crime Family of La Cosa Nostra, *see generally United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993)), in the course of the NG defendants' efforts to promote a television mini-series entitled "Inside the Mafia." *See* Complaint ¶¶ 19-27. The photograph depicts Gotti in the foreground, wearing a jacket and tie, and a similarly dressed Alfano slightly behind him and to one side with his left hand holding Gotti's right arm by the elbow. *See* DE 32-2 at 93, 94 (copies of photograph).

Alfano's explanation for how he and Gotti happened to come together to be photographed, despite having only a limited relationship, is set forth in his answers to some of the defendants' interrogatories in this case. As far as I know, that explanation is not in dispute, and I reprint it in full below:

> 2.    Please describe in detail any relationship (personal, professional, or otherwise) you have had with John Gotti:
>
> RESPONSE: Plaintiff Alfano had an indirect relationship consisting of attending one wedding for a mutual friend in late 1987 or 1988 and two (2) funerals over a twenty year span. Alfano would attend the public fireworks in July, on occasion, at his club located at 101st Ave. in Queens, New York, along with approximately 2000 people from the area. Other than these events, Plaintiff had no relationship with John Gotti.

3. *Please identify the time, date, place and location where the Photograph was taken:*

RESPONSE: The Photograph was taken at the Court House during the trial, at the Southern District Court House in Manhattan in 1991.[1] Mr. Alfano was in attendance with a friend, Joe Tacopina, who was clerking for one of the co-defendant's lawyers, Bruce Cutler, Esq. Plaintiff's family knew one of the co-defendants, Anthony Guerrieri, because Plaintiff dated his (Guerrieri's) cousin when he was 20yrs. [sic] old and kept a close relationship thereafter. By coincidence in 1991, John Gotti grabbed Plaintiff Alfano's arm [sic] as they were walking out, as a group.

4. *Please ... describe in detail the circumstances under which you came to be photographed next to John Gotti:*

RESPONSE: Plaintiff was merely a spectator walking with friends, as described above. There was a media horde outside. Plaintiff Alfano was walking with the group of lawyers and he was caught up in a crowd of people. John Gotti held Alfano's arm [sic] for less than 10 seconds, to brace himself from the throng.

DE 32-2 at 97-98 (Affirmation of [NG defendants' counsel] Russell A. Gaudreau in Opposition to Plaintiff's Motion for a Protective Order Ex. F at 2-3).

B. The Facts Relevant To The Instant Motion

Alfano's motion for recusal is predicated on two facts arising from my work as an Assistant United States Attorney in this district, a position that I held from late February 1990 (after the conclusion of Gotti's state court trial in Manhattan) until late June 2001, with one brief interruption while assigned to a different component of the Justice Department. Alfano relies first on the fact that I was a member of the prosecution team in *United States v. John Gotti, et al.*, 90-CR-1051 (ILG) (E.D.N.Y.). *See* DE 73, Memorandum of Law ("Memo.") at 2 ("the Magistrate Judge did not disclose his direct participation in the prosecution of Gotti (during the

---

[1] As discussed below, *see* n.3, *infra*, the photograph could have been taken no later than February 9, 1990, the date on which Gotti's trial in New York State Supreme Court, New York County (which is close to the federal courthouse for the Southern District of New York) ended.

3

1990's when the photograph at issue was originally taken)"). Second, Alfano asserts that I did not disclose my "recent attendance at a reunion of the Gotti prosecutors and others at the Keens Steakhouse on or about March 31, 2007 until [Alfano's] attorney asked [me] directly in open court." DE 73, Plaintiff's Affidavit in Support of Motion to Recuse Magistrate Judge ("Alfano Aff.") ¶ 14. In a reply affidavit by his counsel, Alfano adds a third basis for my disqualification: a reference to Gotti during the course of certain testimony I provided at a hearing before Congress. *See* DE 79 (Affidavit of H. Todd Bullard) ("Bullard Aff.") ¶¶ 16-17.

Before Alfano filed the instant motion, his attorney raised the matter at a conference before me on September 6, 2007. *See* DE 76 (Transcript of Pretrial Conference) ("Tr.") 13 ("Your Honor, from our side the only question that we had would be the Judge's impartiality. We're not sure if the Judge was involved in the earlier Gotti prosecutions.").[2] When counsel described the factual bases of his anticipated motion, I provided him with certain additional information that he might find relevant. First, with respect to my work in prosecuting Gotti – and more importantly, the implicit suggestion that I performed such work "when the photograph at issue was originally taken," Memo. at 2, I pointed out that the "trial where the photograph was taken was a state trial that I had nothing to do with." Tr. 18. Alfano's counsel acknowledged that fact, *see* Tr. 19, but nevertheless elides it in presenting his motion.[3]

---

[2] At the time Alfano's counsel stated that he was "not sure" if I was "involved in the earlier Gotti prosecutions" he had already, less than two weeks earlier, argued to the assigned district judge that I should be disqualified precisely because of my "personal involvement" in that case. DE 63-2 at 13. The judge to whom that argument was made has since determined that any challenge to my participation in the case must be directed to me in the first instance. *See* DE 80.

[3] The timing of the photograph and its connection to Gotti's trial in state court – which ended even before I began my job as a federal prosecutor, and longer still before I joined the prosecution team in Gotti's federal case – is discussed in detail in an earlier Memorandum and

4

Second, with respect to the social gathering that Alfano now describes as "a reunion of the Gotti prosecutors," Alfano Aff. ¶ 14, I answered counsel's question about the nature of the event as follows:

> And as for a dinner, there was a private celebration among people involved in that case and involved in many other cases but who all worked together and it had nothing to do with the Gotti case as such.
>
> It was a reunion of prosecutors who had worked in my office and had worked together for a period of years. So to the extent [your motion] would be based on that, a fully informed observer would know that it was not about the Gotti case or a celebration on [sic] the Gotti case.

Tr. 27. Alfano's counsel responded to that information by citing a report on an Internet web site that "says it was actually the Gotti team" at the dinner. Tr. 27. That prompted the following exchange:

> THE COURT: Look, you – if you want to – you said you wanted information from me so that you could make an accurate representation. If you're interested in the facts, I told you that. If you're interested in inaccurate reports, rely on those. But I can only tell you what I know and what is in fact the case. If you choose to ignore it, by all means go ahead and make your motion.
>
> MR. BULLARD [Alfano's counsel]: Again, Your Honor, I'm not choosing to ignore anything.

Tr. 27-28.[4]

---

Order in this case. *See* DE 37 (Memorandum and Order dated April 25, 2007) (the "April Order") at 7-8. The discussion included facts drawn from public record documents, including two published court opinions from the federal *Gotti* prosecution that explicitly noted my participation as attorney of record. *See United States v. Locascio*, 6 F.3d 924, 929 (2d Cir. 1993) (case cited in April Order at 7); *United States v. Gotti*, 171 F.R.D. 19, 20 (E.D.N.Y. 1997) (same). Thus, even if Alfano and his counsel had no occasion to consider public record information about me at the start of the federal proceedings in this case, they could certainly have taken it into account as early as April of this year upon reading the cases I cited to their attention.

[4] Alfano did not mention in his initial papers the precise source of his incorrect information about the social event I attended. In his attorney's reply affidavit, he provides a copy of the

True to his word, Alfano's counsel has not misrepresented the nature of the dinner in arguing that I should be disqualified. Alfano himself, however – who was himself present, *see* Tr. 2, and therefore heard the answer that his counsel pledged not to ignore – nevertheless persists in mischaracterizing the event in his sworn statement. *See* Alfano Aff. ¶ 14; Memo. at 2 (citing Alfano Aff. for "[a]dditional facts" regarding counsel's argument that "a question about the Magistrate's impartiality can reasonably be raised based on the totality of the circumstances"). For purposes of the instant motion, however, I will accept Alfano's knowingly distorted description and assume that I attended "a reunion of the Gotti prosecutors" at the time and place he describes.

A third area that Alfano's counsel mentioned as a possible basis for my disqualification at the conference on September 6, 2007, was the fact that, prior to my appointment as a magistrate judge, I provided testimony to Congress. Counsel raised the issue by noting that "when we did do the research, you voluntarily testified ... before Congress with respect to the Gotti

---

article on which he relied. *See* Bullard Aff. Ex. B (reprinting Jerry Capeci, "Celebrating 15 Years Since the Fall of the Don" ("Capeci Article")). Alfano's counsel quotes the article's author as opining that "[t]here was little doubt [] that the Gotti takedown was the central focus of the get-together." *Id*. ¶ 13 (quoting Capeci Article). In doing so, Alfano ignores the article's report that none of the welcoming remarks at the "very low-key" event "mentioned Gotti's name" and that the event was "really a get-together of a lot of prosecutors and agents who worked organized crime cases in Brooklyn during the '80s and '90s." Capeci Article. Having thus reported the author's opinion (that the event was focused on the *Gotti* case) but not the actual facts on which the opinion is based (that the event was not), Alfano's counsel then asserts that the author "is recognized as an expert on organized crime' ...." *Id*. ¶ 14 (citing a television interview of the author so described). It implies no quarrel with the author's qualification as an "expert on organized crime" to note that such expertise does not qualify him as an expert on the nature of a private social event he did not attend. Nor is expertise in the field of organized crime particularly relevant: as discussed below, the relevant perspective is not that of the "expert" but that of the fully-informed observer. The latter would know that the event Alfano cites was not a reunion of the *Gotti* case prosecutors as such, even if the "expert" does not.

6

prosecutions[.]" Tr. 20.  I immediately corrected counsel and informed him that "I have testified before Congress, but not about the Gotti prosecution." Tr. 20.  Alfano's counsel, who "did do the research," then amended his factual assertion by informing me that I had testified "about organized crime in general[.]" Tr. 20.  Later in the conference, I provided further information about the testimony:  "I have testified four times in front of Congress with respect to a proposed constitutional amendment to add victims rights to the United States Constitution.  That was the subject matter of the testimony." Tr. 28.[5]

Alfano did not mention the matter of my Congressional testimony in his initial motion papers, but did discuss it in his reply.  As Alfano presents the matter, my testimony included the following, which I render precisely as Alfano's counsel has in his affidavit:

> 16.    Additional extrajudicial conduct that causes Magistrate Judge Orenstein's impartiality to be questioned involves the Court's testimony before the U.S. Senate Committee on the Judiciary in April 2003, in which he discusses, *inter alia*, "crime victims who are more sympathetic to the criminals than to the government...to illustrate that perverse kind of alliance...that their agenda was to help Gotti was demonstrated by the fact that when Gravano impleaded Gotti into the lawsuit, the problem disappeared." See Exhibit "C," at p. 4, par. 2 (emphasis supplied).
>
> 17.    The assigned Magistrate Judge appears to view those who "help Gotti" as individuals who are involved in a "perverse kind of alliance" that furthers criminal or "mob" activity.

Bullard Aff. ¶¶ 16-17 (ellipses in original).

---

[5] Specifically, I testified before the House Judiciary Committee, Subcommittee on the Constitution, on May 9, 2002, *see* 2002 WL 973663; before the Senate Judiciary Committee, Subcommittee on the Constitution, on July 17, 2002, *see* 2002 WL 1584475; before the full Senate Judiciary Committee on April 8, 2003, *see* 2003 WL 1827697; and before the House Judiciary Committee, Subcommittee on the Constitution, on September 30, 2003.  Where available, I have provided citations for my prepared testimony, which does not include the shorter oral prepared statement that I gave at each hearing or the answers to legislators' questions.

In addition to erroneously describing the testimony as being "the Court's" – I was an attorney in private practice at the time I testified – counsel's rendering of the quotation (which falsely signals that all of the quoted words are drawn from the same sentence) completely distorts its context and import. Unfortunately, to provide such context and make the import clear, I must provide a rather longer unedited passage from which Alfano's counsel has drawn the quotation – not all of which Alfano's counsel has included in the exhibit to his affidavit:

> It is important to emphasize that the potential risks to effective law enforcement are not the result of giving legal rights to victims and placing corresponding responsibilities on prosecutors, judges, and other governmental actors. The changes brought about by improved legislation in this area over the past twenty years have demonstrated that the criminal justice system can provide better notice, participation, protection and relief to crime victims without in any way jeopardizing the prosecution of offenders. To the contrary, I strongly believe that prosecution efforts are generally more effective if crime victims are regularly consulted during the course of a case, kept informed of developments, and given an opportunity to be heard. There are of course occasions when such participation can harm law enforcement efforts, but my experience has been that most crime victims are more than willing to accommodate such needs if their participation is the norm rather than an afterthought. In most cases, crime victims and prosecutors are natural allies: both want to secure the offender's punishment, and both are better able to work toward that result if the prosecutor keeps the victim notified and involved. But there are a number of cases – typically arising in the organized crime context and in prison settings – where the victim of one crime is also the offender in another, and the kind of participatory rights that this Amendment mandates would harm law enforcement efforts.
>
> When a mob soldier decides to cooperate with the government, he typically pleads guilty as part of his agreement, and in some cases then goes back to his criminal colleagues to collect information for the government. If his disclosure is revealed, he is obviously placed in great personal danger, and the government's efforts to fight organized crime are compromised. Under this Amendment, such disclosures could easily come from crime victims who are more sympathetic to the criminals than the government. To illustrate that perverse kind of alliance: When I was working on the case against mob boss John Gotti, ten weeks before the start of trial, Gotti's underboss, Salvatore Gravano, decided to cooperate and testify – but for weeks after he decided to do so he was still in a detention facility with Gotti and other criminals and at grave risk if his

8

> cooperation became known. Luckily, that did not happen. But there were clearly victims of Gravano's crimes who would have notified Gotti if they could have done so. Gravano had, at Gotti's direction, killed a number of other members of the Gambino Family. Shortly after Gravano's cooperation became known, some of the murdered gangsters' family members filed a civil lawsuit for damages against Gravano – but not Gotti – and sought to use the civil discovery procedures to collect impeaching information about Gravano before the start of Gotti's trial. That their agenda was to help Gotti was demonstrated by the fact that when Gravano impleaded Gotti into the lawsuit, the problem disappeared.
>
> Some argue that this problem of victim notification of cooperation agreements in organized crime cases is cured by the fact that the cooperating defendant's plea normally takes place in a non-public proceeding. While this may be true in a small number of cases, it is generally an unreliable solution. First, the standard for closing a public proceeding is exceptionally high, *see* 28 C.F.R. § 50.9, and as a result cooperators' guilty pleas are rarely taken in proceedings that are formally closed to the public. Instead, it is usually necessary to take such a plea in open court and protect the need for secrecy by scheduling it at a time when bystanders are unlikely to be present and by not giving advance public notice of the plea. Such pragmatic problem- solving would not work under the proposed Amendment, because victims allied with the targets of the investigation would be entitled to notice. Second, the Amendment's guarantee of the right to an adjudicative decision that considers the victim's safety might make courts reluctant to release a cooperating defendant to gather information without hearing from victims at the bail proceeding.

2002 WL 973663 (May 9, 2002).[6]

Thus, to the extent that Alfano infers from my testimony that I considered anyone who ever provided any form of assistance to Gotti as having a perverse alliance with criminals – including Alfano, who says his sole interaction with Gotti is that he once opened a car door for him while finding himself fortuitously at Gotti's side in the middle of a crowd – he has simply misread my testimony. As the context makes plain, the concern I expressed to Congress was that prematurely notifying criminals (or those who share their objectives) of the decision by one of

---

[6] The text of my prepared statement at each of the hearings at which I testified ranged from 13 to 16 single-spaced pages in length. In each version, I cited the Gotti case in a single paragraph to illustrate one issue out of the many that were relevant to the proposed constitutional amendment.

9

their number to cooperate with law enforcement can jeopardize lives and compromise the interests of law enforcement.

In sum, Alfano relies on several assertions of fact, each of which is presented in a way that distorts the truth. Nevertheless, for purposes of addressing the merits of his motion, I will assume that a fully-informed observer would know (or at least believe) the following: (1) I was one of several attorneys who prosecuted Gotti in a federal case that was filed in December 1990;[7] (2) the *Gotti* case on which I worked as a federal prosecutor did not begin until more than ten months after the photograph of Alfano with Gotti was taken outside the site of Gotti's trial on unrelated charges in a state court; (3) I celebrated Gotti's conviction at a dinner in March 2007; (4) I gave testimony about Gotti's federal case at various Congressional hearings prior to my appointment as a magistrate judge; and (5) I have never known anything about Alfano himself, or the nature and extent of any contact he may have had with John Gotti, other than the information the parties have provided to me on the record during the proceedings in this case.

II.  Discussion

   A.  The Motion Is Untimely

As the courts in this circuit have repeatedly "made clear, 'recusal motions are to be made "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim."'" *LoCascio v. United States*, 473 F.3d 493, 497 (2d Cir. 2007) (quoting *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 247 (2d Cir. 1996) (quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987))). That requirement is designed to "ensure that a party does not 'hedg[e] its bets against the eventual outcome' of a proceeding[.]" *United States v.*

---

[7] My own participation in the case actually began some six months later, in May 1991.

*Amico*, 486 F.3d 764, 773 (2d Cir. 2007) (quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333-34 (2d Cir.1987)). In addition to requiring a motion at the earliest possible time, the courts of this circuit also apply a four-part test in assessing the timeliness of such a motion:

> we look to four factors: whether "(1) the movant has participated in a substantial manner in trial or pre-trial proceedings; (2) granting the motion would represent a waste of judicial resources; (3) the motion was made after the entry of judgment; and (4) the movant can demonstrate good cause for delay."

*Id*. (quoting *Apple*, 829 F.2d at 334 (internal citations omitted)). Applying that standard to the facts of this case, the instant motion is untimely.

The defendants contend that Alfano should have filed his motion no later than when my name "first appeared on the docket sheet for this case, which was well over a year ago." DE 77 ("Def. Memo.") at 2. That is not necessarily correct: the law requires a movant to seek disqualification promptly upon "obtaining knowledge" of the relevant facts, not simply when a more diligent party in the movant's shoes would have obtained such knowledge. *See In re Kensington Intern. Ltd.*, 368 F.3d 289, 313 (3d Cir. 2004) (timeliness of motion depends on movant's actual rather than constructive knowledge of underlying circumstances); *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991) (recusal motion timely where movant learned of underlying facts, which had existed for eighteen months, only ten days before filing motion). Accordingly, assessing the timeliness of Alfano's motion requires me to know when Alfano learned of my role as a prosecutor in the federal *Gotti* case. Unfortunately, Alfano has not provided that information. One day before his counsel filed the instant motion – and almost two weeks after the matter was discussed in open court in his presence, *see* DE 67 – Alfano swore that he was "*now* aware" of my role in the federal *Gotti* prosecution. Alfano Aff. ¶ 6 (emphasis

11

added). He did not specify when he first became aware of that fact, although he did add that "[t]he Defense attorneys *have been* appealing to the 'anti-John Gotti' bias based on [my] role as a 'former Gotti prosecutor.'" Alfano Aff. ¶ 11 (emphasis added). The latter statement suggests that Alfano's awareness of my prior work has prompted his concern for some time about the defendants' supposed exploitation of the circumstances.[8] Indeed, even after the defendants raised the issue of timeliness, DE 77 at 2-3, Alfano's counsel still failed to provide the information in his reply affidavit. Instead, he writes only that the motion was filed "as soon as possible after Plaintiff undertook the necessary diligence to determine if a 28 U.S.C. Section 455(a) motion was necessary to protect the Plaintiff's specific interests in this case." Bullard Aff. ¶ 19.[9]

---

[8] Alfano does not provide any examples of defendants' attorneys appealing to my imagined "'anti-John Gotti' bias" and likewise fails to provide the source of his quotations in the cited portion of his affidavit.

[9] The proposition that a motion pursuant to subsection *(a)* of 28 U.S.C. § 455 can ever be "necessary to protect [a party's] specific interests in [a] case" is inherently suspect. Subsection (a) requires disqualification not for actual bias or knowledge of disputed facts (that is covered in subsection (b)(1)), but only where a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Thus, the motion now before me – at least to the extent it is based on subsection (a), which is the sole context in which Alfano's counsel refers to protecting his client's interests – is not one in which any party's actual litigation interests are at stake in any way; to the contrary, Alfano's motion under subsection (a) invokes a statute that is designed to protect the integrity of the judicial process as such. And while a motion under subsection (b)(1) does unquestionably implicate a party's own interests, I note that Alfano makes no substantive effort to show that recusal is warranted under that statute. After citing that provision in his notice of motion, his only effort to allege or argue actual bias is Alfano's claim that he perceives me to be biased because I have made rulings against him that he believes to be wrong. In that regard, I note three things. First, I have also made rulings in his favor in this case. *See* DE 37 (granting Alfano a protective order over defendants' objections); DE 75 (ordering NG defendants to produce certain documents notwithstanding their assertion of privilege). Second, Alfano did not seek review of most of the rulings against him pursuant to Rule 72(a) despite ample opportunity to do so. Third, the assigned district judge, who is presumably unbiased, summarily rejected Alfano's sole challenge to one of my orders. *See* DE 80.

The record demonstrates that Alfano and his counsel knew of my role as a prosecutor in the federal *Gotti* case no later than August 24, 2007 (the date stamped on the bottom of the copy of my Congressional testimony that Alfano has submitted as part of his reply, *see* Bullard Aff. Ex. C). Indeed, the record demonstrates that Alfano must have learned that fact even earlier, as his counsel made clear that his discovery of my testimony came during his "research" into a matter that had already claimed his attention. *See* Tr. 20. Given the date of the Capeci Article on which Alfano relies – April 12, 2007, *see* Bullard Aff. Ex. B – it seems far more reasonable to conclude that he learned of my work as a prosecutor months before the instant motion was filed and improperly sat on the information until after he had litigated and lost the one pretrial matter he has considered sufficiently important to warrant seeking review pursuant to Rule 72.

I need not rely on such supposition. It is beyond dispute that Alfano waited almost a month between improperly asking another judge to disqualify me[10] and filing the instant motion. *See* DE 63 at 12-13 (asking district judge to recuse me in connection with Rule 72 objections filed on August 26, 2007); DE 73 (disqualification motion dated September 20, 2007). That fact alone makes it manifest that Alfano did not file his motion at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for it, and therefore compels a finding that

---

[10] The statute explicitly refers to a judge's obligation to "disqualify himself[.]" 28 U.S.C. § 455(a). Consistent with that language, courts uniformly recognize that a motion to disqualify a judge must be directed in the first instance to the judge whose removal is sought, rather than to any other. *See*, *e.g.*, *In re Certain Underwriter*, 294 F.3d 297, 302 (2d Cir. 2002) ("The discretion to consider disqualification rests with the district judge in the first instance.") (citing *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1312 (2d Cir. 1988)); *Locascio*, 473 F.3d at 498 ("a judge has an affirmative duty to inquire into the legal sufficiency of ... an affidavit [asserting a basis for his disqualification] and not to disqualify himself unnecessarily, particularly 'where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.'") (internal citations omitted).

the motion is untimely. To frame the matter in the language of *Apple* and its progeny, Alfano – who has participated in a substantial manner in pre-trial proceedings – can demonstrate no good cause for his delay in filing the instant motion; and granting his request and requiring another magistrate judge to resolve any remaining non-dispositive pretrial matters would represent a waste of judicial resources.[11] *See Apple*, 829 F.2d at 333.

B.   The Motion Is Meritless

As an alternative to denying the motion as untimely, I also deny it on the merits. The standard for assessing such a motion is settled, although it can be stated in a variety of essentially equivalent ways. The fundamental question presented by Alfano's motion is whether "a reasonable person knowing and understanding all the relevant facts" would doubt my ability to be fair in this case. *LoCascio*, 473 F.3d at 496 (quoting *United States v. Bayless*, 201 F.3d 116, 126-27 (2d Cir. 2000)); *see also United States v. Oluwafemi,* 883 F. Supp. 885, 890 (E.D.N.Y.

---

[11] One consequence of Alfano's delay in filing the instant motion is that he has made it essentially moot (although not so completely as to render it non-justiciable). Pursuant to the rules of this court, my mandate upon being assigned to this case was "to act with respect to all non-dispositive pretrial matters unless the assigned district judge orders otherwise." Loc. Civ. R. 72.2(a). To date, the assigned district judge has entered no order restricting the scope of that assignment. *See* Loc. Civ. R. 72.2(b). Now that the parties have completed discovery and submitted a joint pretrial order that substantially complies with the assigned district judge's individual practice rules (and also tried, albeit without success, to assist the parties in negotiating a settlement), my duties in the case are almost at an end. The only exception is that the parties are also currently litigating a non-dispositive pretrial dispute relating to Alfano's desire to call certain trial witnesses as to whom the defendants claim he has provided insufficient disclosure. *See* DE 70. I have deferred resolving that dispute while the instant motion is pending. *See, e.g.*, *Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO*, 402 F.3d 314, 318 (2d Cir. 2005) (discussing the "forbearance requirement" triggered by a motion under 28 U.S.C. § 144); *Apple*, 829 F.2d at 333 (standard for disqualification under 28 U.S.C. § 455(b)(1) is the same as that under § 144). Accordingly, if I grant the motion, another magistrate judge will have to become familiar with the extensive history of discovery disputes in this case to be in a position to resolve the last remaining such dispute.

1995) (standard is "whether an objective, disinterested observer fully informed of the underlying facts would entertain significant doubt that justice would be done absent recusal") (citing *DeLuca v. Long Island Lighting Co., Inc.,* 862 F.2d 427, 428-29 (2d Cir.1988)). Stated differently, the facts set forth in the affidavits supporting the motion "'must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.'" *LoCascio*, 473 F.3d at 498 (quoting *Wolfson v. Palmieri*, 396 F.2d 121, 124 (2d Cir. 1968)) (internal quotation marks omitted). Where that standard is not met, there is no basis for recusal and the judge is therefore "obligated not to recuse herself." *Oluwafemi,* 883 F.Supp. at 890 (citing *In re Drexel Burnham Lambert, Inc.,* 861 F.2d at 1312; *Wolfson,* 396 F.2d at 124); *see also Amico*, 486 F.3d at 775 n.4 ("a judge should not disqualify himself in the absence of a violation of § 455") (citing *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001))

Applying that exacting standard, I must deny Alfano's motion. I start with the assumption that an objective, disinterested observer would doubt my ability as a judge to be fair to Gotti or indeed to any defendant in any case on which I worked as a prosecutor. I will even assume – though I doubt the proposition would withstand legal scrutiny – that such an observer would doubt my ability to be fair to a person whom the evidence in the case before me demonstrated to be a member of Gotti's criminal organization, even if I had never been aware of that person's connection with Gotti prior to my participation in the case in which such evidence was adduced. But the circumstances of this case do not come close even to that attenuated standard.

First, I have no information of any sort about Alfano that is not derived from my participation as a judicial officer in this case. Thus, nothing I may have learned about Alfano himself can possibly require my disqualification under either subsection (a) or subsection (b)(1)

of 28 U.S.C. § 455. *See Omega Engineering, Inc. v. Omega S.A.*, 432 F.3d 437, 447-48 (2d Cir. 2005) ("Knowledge gained from the judge's discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1).") (citing *Katsaros v. Cody*, 744 F.2d 270, 283 (2d Cir.1984)); *United States v. Kasman*, 1993 WL 278440, *3 (E.D.N.Y. July 20, 1993) (referring to, and citing "just a few" of, "the countless cases which reiterate the principle that a motion to recuse under § 455(a) may be made only on the basis of alleged bias or prejudice from an extrajudicial source").

Second, nothing that I have learned about Alfano in the course of this case in any way suggests that he had any relationship with Gotti at all, much less the kind of affinity with Gotti's criminal conduct that might presumably arouse doubts about my impartiality. Alfano is a decorated former firefighter, who served the public for 23 years before retiring in the aftermath of his work in the efforts to help his city recover from the terrorist attacks of September 11, 2001. DE 34 (Alfano's Affidavit in Support of Motion Seeking a Protective Order) ¶¶ 3, 7. He has "never served as a bodyguard for John Gotti or any other member of organized crime." *Id*. ¶ 6. As Alfano has asserted without any contradiction of which I am aware, his appearance next to Gotti in the photograph at issue in this case was his first and only encounter with the man and essentially a matter of happenstance: as a result of his friendship with Gotti's co-defendant's counsel's clerk and with the co-defendant's cousin, Alfano decided to attend Gotti's trial and then, caught up in a crowd outside, found himself in Gotti's presence for a matter of seconds. Certainly the photograph itself conveys no information that would inevitably suggest anything untoward about Alfano, even to someone presumptively hostile to Gotti: an observer of the photograph familiar with Gotti but ignorant of Alfano could just as easily infer that Alfano was a

law enforcement official escorting Gotti into or out of court as he could infer that Alfano was a criminal associate of Gotti's;[12] each of those incorrect inferences is no more or less obvious than Alfano's uncontroverted explanation of the event.

Third, none of the facts about my prior career on which Alfano relies adds anything pertinent to the basic proposition that I once prosecuted Gotti. Even if – contrary to the facts, but consistent with the distorted way Alfano has described them – I had been prosecuting Gotti "when the photograph at issue was originally taken," Memo. at 2, that circumstance would not give rise to any knowledge of or bias against Alfano. Similarly, the assumption that I recently attended a "reunion of Gotti prosecutors" adds no relevant information: a reasonable observer who would assume my bias toward Gotti and his confederates would infer from the latter fact only that my supposed antipathy toward Gotti continued, not that there was any reason to assume the bias extended to anyone else. Likewise, the fact that I mentioned Gotti's prosecution to illustrate my views about a proposed constitutional amendment would provide no reason for an objective observer to conclude that I would bring any bias to bear on this case.

In short, Alfano's motion reduces to nothing more than the proposition that a judge should withdraw from a case in which one party maintains a friendship with the family or counsel of another person who, in another lawsuit, was the co-party of still another person who was, in still

---

[12] To illustrate the point: On December 12, 1990, the front page of the New York *Times* featured a photograph of Gotti. The photograph depicts Gotti in the foreground, wearing a jacket and tie, and two similarly dressed men slightly behind him and to each side, one with his right hand holding Gotti's left arm by the elbow. The headline of the accompanying article – "Gotti and 3 Top Aides Arrested On Federal Racketeering Charges" – might well lead the casual observer to conclude that the men shown beside Gotti in the photograph were two of the "Top Aides" who had been charged with serious crimes. Upon reading the caption, however, such an observer would learn that men were "Federal agents" leading Gotti out of their headquarters. A copy of the article is appended to this document.

another lawsuit, once adverse to the judge's former client. To state the proposition is to demonstrate the absurdity that refutes it. If that is the stuff of which recusals are made, members of the judiciary will have little time for anything other than ferreting out potential bases for disqualifying themselves; they certainly will never get around to actually doing their work.[13]

III.  Conclusion

As Judge I. Leo Glasser of this court once observed in rejecting a similarly baseless motion for disqualification, there is, in addition to the statute that prescribes a judge's obligation to recuse, another statute that should properly be considered in this context: the one that required me, upon entering service as a federal judicial officer, to swear or affirm "that I will administer justice without respect to persons … and that I will faithfully and impartially discharge all the duties incumbent upon me …." 28 U.S.C. § 453 (quoted in *Kasman,* 1993 WL 278440, at *7). Like Judge Glasser, I remain ever conscious of my oath in considering the instant application. For the reasons set forth above, I deny the motion of plaintiff Robert Alfano to disqualify me pursuant to Title 28, United States Code, Section 455.

**SO ORDERED.**

Dated: Brooklyn, New York
October 5, 2007

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge

---

[13] Although I have not found a case directly on point, I note that the court in *Oluwafemi* rejected a far less attenuated claim of bias. In that case, a judge in this district who likewise prosecuted Gotti and other organized crime members prior to his judicial appointment denied a motion to disqualify himself from the trial of a defendant represented by an attorney who had himself been the judge's adversary in connection with the conviction of Gotti's brother and who claimed to have "openly and vehemently opposed" the judge's nomination to the bench. *See* 883 F. Supp. at 890-92. If those facts did not require disqualification, the facts of this case certainly do not.

18

# APPENDIX

(N.Y. Times, Dec. 12, 1990, at A1)

# Gotti and 3 Top Aides Arrested On Federal Racketeering Charges

By SELWYN RAAB

John Gotti, the man whom law-enforcement authorities have failed three times to convict, was arrested last night on Federal racketeering charges.

Mr. Gotti was taken into custody about 7 P.M. in his main meeting place in Manhattan, the Ravenite Social Club in Little Italy, by about 15 agents of the Federal Bureau of Investigation and detectives of the New York City Police Department.

Three other men identified by Federal authorities as Mr. Gotti's aides in the Gambino organized-crime family were also arrested.

A spokesman for the F.B.I., Joseph Valiquette, said Mr. Gotti "appeared to be surprised" when the authorities arrived at the social club. Later, when Mr. Gotti — his hands cuffed behind his back — emerged from F.B.I. headquarters in lower Manhattan, he appeared unconcerned.

His lawyer, Bruce Cutler, could not be reached for comment last night, but last month, when reports surfaced that Mr. Gotti's indictment was imminent, Mr. Cutler said, "We're ready for them."

The three Gotti aides who were arrested are Frank (Frankie Loc) Locascio, identified by the F.B.I. as the underboss in the Gambino family; Salvatore (Sammy Bull) Gravano, named by the authorities as the consiglieri, or third-ranking member, of the group; and Thomas Gambino, identified as a capo or captain who runs rackets in the Garment District.

Mr. Gambino's father, Carlo Gambino, was known as the "boss of bosses,"



John Gotti being led from F.B.I. headquarters by Federal agents.



THE NEW YORK TIMES is available for home or office delivery in most major U.S. cities. Please call this toll-free number: 1-800-631-2500 ADVT

Continued on Page B7, Column 3